### United States District Court
### District of Massachusetts

| | |
|---|---|
| Robert Nightingale, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | 19-12341-NMG |
| National Grid USA Service ) | |
| Company, Inc. et al, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

This putative class action involves claims of unfair and deceptive business practices in violation of the Massachusetts Consumer Protection Act, M.G.L. c. 93A. Robert Nightingale ("plaintiff" or "Nightingale") brings this action on behalf of himself and all others similarly situated against National Grid USA Service Company, Inc. ("National Grid"), iQor US Inc. ("iQor") and its subsidiary First Contact LLC ("First Contact").

Pending before the Court is the motion of First Contact and iQor (collectively, "defendants") to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). For the following reasons that motion will be denied.

I.   **Background**

Nightingale is a resident of Boston, Massachusetts.  National
Grid is an electricity, natural gas and clean energy delivery
company located in Waltham, Massachusetts.  iQor provides
business process services, including first-party debt collection
services.  First Contact is a wholly-owned subsidiary of iQor
and provides business support services.  Both business entities
are located in St. Petersburg, Florida.

Plaintiff alleges that he incurred a debt to National Grid
for electricity services and National Grid contracted with First
Contact and iQor to place first-party collection calls on its
behalf in order to collect that debt.

Between June 20 and June 23, 2018, defendants allegedly
called Nightingale's cell phone five times in an attempt to
collect the debt.  Nightingale claims that defendants' repeated
calls (1) caused him anger, anxiety, emotional distress, fear,
frustration and embarrassment; (2) were distracting,
inconvenient and an invasion of his personal privacy and (3)
wasted his time and energy.

In October, 2018, plaintiff filed a complaint in
Massachusetts Superior Court on behalf of himself and a putative
class of Massachusetts consumers, naming "National Grid USA
Company, Inc." as the sole defendant.  In December, 2018,
plaintiff filed an amended complaint correctly identifying the

defendant as National Grid USA Service Company, Inc. During
discovery, National Grid represented that it had contracted with
First Contact to place first-party collection calls on its
behalf.  In September, 2019, Nightingale filed a second amended
complaint naming First Contact and iQor as co-defendants.  First
Contact and iQor then removed the action to this Court on
grounds of diversity jurisdiction and pursuant to the Class
Action Fairness Act, 28 U.S.C. § 1453(b).

## II.  __Motion to Dismiss__

### A. Legal Standard

To survive a motion to dismiss for failure to state a claim
under Fed. R. Civ. P. 12(b)(6), a complaint must contain
"sufficient factual matter" to state a claim for relief that is
actionable as a matter of law and "plausible on its face."
Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009) (quoting Bell Atl.
Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is
facially plausible if, after accepting as true all non-
conclusory factual allegations, the court can draw the
reasonable inference that the defendant is liable for the
misconduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d
1, 12 (1st Cir. 2011).  A court may not disregard properly pled
factual allegations even if actual proof of those facts is
improbable. Id.  Rather, the relevant inquiry focuses on the

reasonableness of the inference of liability that the plaintiff is asking the court to draw. Id. at 13.

When rendering that determination, a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to judicial notice. Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).

### A. Applicable Law

The Massachusetts debt collection regulations were enacted pursuant to authority granted to the Office of the Attorney General by Chapter 93A.  Those regulations restrict the frequency with which "a creditor may attempt to contact a debtor via telephone in order to collect a debt." Armata v. Target Corp., 99 N.E.3d 788, 790 (Mass. 2018).  Specifically, 940 C.M.R. § 7.04(1)(f) bars creditors from "[i]nitiating a communication with any debtor via telephone . . . in excess of two such communications in each seven-day period." Id.

To state a claim under the subject regulation, a plaintiff must allege that (1) he is a debtor, (2) the defendants are creditors, and (3) defendants telephoned him in an effort to collect a debt more than twice over the course of a seven-day period. See Harrington v. Wells Fargo Bank, N.A., No. CV 19-11180-RGS, 2019 WL 3818299, at *3 (D. Mass. Aug. 14, 2019).

### B. Application

#### i. Chapter 93A Claim

iQor and First Contact maintain that Nightingale's complaint fails to allege a Chapter 93A violation because it relies on conclusory allegations and omits basic facts about (1) the debt, (2) the debt collection calls and (3) plaintiff's specific injury.  Nightingale responds that the complaint sufficiently states a claim for relief because it alleges that defendants collectively engaged in deceptive acts that caused him to suffer separate, identifiable injuries including emotional distress.

The facts as set forth in the complaint, and taken as true for the purposes of a motion to dismiss, suggest that (1) Nightingale incurred a financial obligation to National Grid, (2) National Grid contracted with First Contact and iQor to place debt collection calls on its behalf and (3) between June 20 and June 23, 2018, the defendants placed more than two calls within a seven-day period.  Therefore, plaintiff has properly pled a Chapter 93A violation.

The mere fact that a Chapter 93A violation occurred, however, does not necessarily mean that a consumer is entitled to relief.  See Tyler v. Michaels Stores, Inc., 984 N.E.2d 737, 745 (Mass. 2013).  The Massachusetts Supreme Judicial Court has explained that, a consumer is only entitled to relief if:

-5-

> [T]he violation of the legal right that has created the
> unfair or deceptive act or practice . . . cause[d] the
> consumer some kind of separate, identifiable harm arising
> from the violation itself.

Id.

Nightingale contends that his injuries are distinct from the Chapter 93A violation because, although the violation arose from defendants' placement of more than two collection calls within a seven-day period, the injury stems from the effect those calls had on him (e.g., emotional distress, anger, frustration and embarrassment).  The defendants maintain that the complaint only alleges "negative emotions" which do not constitute a separate, identifiable harm.

The contours of a Chapter 93A injury are imprecise. See Shaulis v. Nordstrom, Inc., 865 F.3d 1, 7 (1st Cir. 2017) (noting that "[m]any courts, both state and federal, have struggled to explain what constitutes an injury under Chapter 93A.").  A plaintiff cannot state a Chapter 93A claim by alleging only a deceptive practice, regulatory noncompliance, or the "impairment of an abstract right without economic loss". Id. (quoting Rule v. Fort Dodge Animal Health, Inc., 607 F.3d 250, 253 (1st Cir. 2010).  To be a legally cognizable injury, the harm "must go[] beyond the deception itself." Id.

Nevertheless, non-economic injuries may be legally cognizable under Chapter 93A. See O'Hara v. Diageo-Guinness,

USA, Inc., 306 F.Supp.3d 441, 453 (D. Mass. 2018)(noting Chapter 93A injuries may include emotional distress or an invasion of privacy).  Courts in this district have explicitly held that anger, anxiety, emotional distress, fear, frustration, embarrassment, distraction and inconvenience may constitute separate, identifiable harm under Chapter 93A. See, e.g., Harrington, 2019 WL 3818299, at *4 (holding such injuries sufficient to plausibly plead a Chapter 93A claim and citing cases; Niedzinski v. Cooper, No. 4:19-CV-40037-TSH, 2019 WL 4396806, at *7 (D. Mass. Aug. 14, 2019).

Nightingale's complaint is short on "substantive factual development." See Niedzinski, 2019 WL 4396806, at *7.  He does, however, allege that (1) he is a debtor, (2) defendants are creditors who called him at a frequency that violates Chapter 93A and (3) he suffered separate, identifiable injuries (i.e., anger, anxiety, emotional distress, fear, frustration and embarrassment; distraction, inconvenience and invasion of privacy; and wasted time and energy).  Accordingly, plaintiff has pled more than a per se injury and his complaint pleads just enough facts to state a claim. See id.

### ii. "Shotgun" Pleading

The defendants next contend that the complaint is an impermissible "shotgun" pleading in violation of Fed. R. Civ. P. 8(a) because it lumps together multiple defendants and is

unclear with respect to which defendant committed each of the
alleged wrongful acts.  Defendants claim that Nightingale fails
to make substantive allegations specific to either First Contact
or iQor and therefore, they cannot discern which defendant is
allegedly responsible for particular conduct.  Plaintiff
responds that the complaint properly alleges that both First
Contact and iQor called him in an attempt to collect the debt
and thus they are each directly liable.

> Courts in this District have explained that:

> To provide the notice required under Rule 8(a), a plaintiff
> cannot "lump" defendants together when it cannot be
> reasonably inferred that all of the defendants were
> involved in the alleged misconduct, or it is otherwise not
> clear to which defendant or defendants the plaintiff is
> referring.

Sires v. Hefferman, No. CA 10-11993-MLW, 2011 WL 2516093, at *5
(D. Mass. June 21, 2011).

In support of their contention that the complaint is
defective, the defendants rely in part on the Tenth Circuit's
decision in Robbins v. Oklahoma which held a complaint was
inadequate in part because of its "use of . . . the collective
term 'defendants' . . . with no distinction as to what acts are
attributable to whom". 519 F.3d 1242, 1250 (10th Cir. 2008).
Unlike that case, and others cited by defendants, however,
Nightingale provides adequate notice as to the nature of the
claim against each defendant because his complaint "make[s]

clear exactly who is alleged to have done what to whom." See id. (emphasis omitted).

Nightingale alleges that both First Contact and iQor placed collection calls to him on National Grid's behalf at a frequency that violated 940 C.M.R. § 7.04(1)(f) and that as result he suffered separate injuries, including emotional distress.  The complaint states a cognizable basis for liability as to each defendant and thereby gives each defendant notice of their allegedly wrongful acts. See id.  The complaint is not, therefore, a "shotgun" pleading.

### iii. Claim Against iQor

Finally, defendants contend that iQor is not a proper party because a parent corporation is not liable for the acts of its subsidiaries.  Plaintiff responds that he is not pursuing iQor solely under a veil-piercing theory but under a theory of direct liability.

The complaint alleges that National Grid contracted with First Contact and iQor to place debt collection calls to Nightingale and that both entities called him in an attempt to collect the debt.  Those facts, taken as true for the purposes of a motion to dismiss, indicate that iQor is a proper party under a theory of direct liability.  Accordingly, at this stage, the Court need not address the veil-piercing issue because plaintiff states a valid Chapter 93A claim against iQor.

**ORDER**

For the foregoing reasons, defendants' Motion to Dismiss for Failure to State a Claim (Docket No. 8) is **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated August 4, 2020