United States District Court
District of Massachusetts

| | |
|---|---|
| **ROBERT NIGHTINGALE,** *on behalf of himself and all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> **NATIONAL GRID USA SERVICE COMPANY, INC., FIRST CONTACT LLC, and IQOR US INC.,** <br><br> Defendants. | Civil Action No. 19-12341-NMG |

**MEMORANDUM & ORDER**

**GORTON, J.**

This putative class action involves claims of unfair and deceptive business practices in violation of Attorney General regulations promulgated under the Massachusetts Consumer Protection Act, M.G.L. c. 93A, § 2. Robert Nightingale ("plaintiff" or "Nightingale") has brought this action under M.G.L. c. 93A, § 9 on behalf of himself and a proposed class and sub-class against National Grid USA Service Company, Inc. ("National Grid"), iQor US Inc. ("iQor") and its subsidiary First Contact LLC ("First Contact") (collectively, "the defendants").

Pending before the Court is plaintiff's motion for class certification (Docket No. 89). For the following reasons, the motion will be denied.

I. **Background**

   A. **Factual Background**

Nightingale is a resident of Boston, Massachusetts. National Grid is an electricity, natural gas and energy delivery company with a principal place of business in Waltham, Massachusetts. iQor provides business process services, including first-party debt collection services. First Contact is a wholly-owned subsidiary of iQor and provides business support services. iQor is a Florida corporation and First Contact is a limited liability company located in St. Petersburg, Florida.

Plaintiff alleges that he incurred a debt to National Grid for electricity services and that National Grid contracted with First Contact and iQor to place debt collection calls on its behalf. Between June 20 and June 23, 2018, defendants are alleged to have called Nightingale's cell phone five times to collect the debt. Nightingale claims that defendants' repeated calls caused him emotional distress, invaded his privacy and wasted his time.

### B. Procedural History

In October, 2018, plaintiff filed suit in Massachusetts Superior Court on behalf of himself and a putative class of Massachusetts consumers against National Grid. During discovery, National Grid represented that it had contracted with First Contact to place first-party collection calls on its behalf. In September, 2019, Nightingale filed a second amended complaint naming First Contact and iQor as co-defendants. Defendants then removed the action to this Court on diversity grounds and pursuant to the Class Action Fairness Act, 28 U.S.C. § 1453(b).

Defendants filed a motion to dismiss the second amended complaint for failure to state a claim which the Court denied in August, 2020. In August, 2021, plaintiff filed a motion to remand the case to state court. The Court denied that motion in January, 2022. Defendants moved for summary judgment in October, 2022, which plaintiff has opposed and countered with motions to exclude certain testimony and to certify a question of law to the Massachusetts Supreme Judicial Court ("SJC"). The latter motions will be held under advisement.

### C. The Proposed Class and Sub-Class

In December, 2022, plaintiff moved to certify a class of Massachusetts residents who were called more than twice within a seven-day period regarding their debts to National Grid. The

proposed class, and a "NER1BO & NER5B" sub-class ("the sub-class"), are defined by plaintiff as follows:

<u>The Class</u>

All persons residing in the Commonwealth of Massachusetts who, within four years prior to the filing of this action, Defendants initiated in-excess of two telephone calls regarding a debt within a seven-day period to their residence, cellular telephone, or other provided telephone number.

<u>NER1BO & NER5BO Sub-Class</u>

All persons residing in the Commonwealth of Massachusetts who, within four years prior to the filing of this action, Defendants initiated in-excess of two telephone calls regarding a debt within a seven-day period to their residence, cellular telephone, or other provided telephone number pursuant to Program Codes NGR.USUT.FE.NER1BO or NGR.USUT.FE.NER5BO.[1]

---

[1] The Court notes that, as discussed with plaintiff's counsel at the February 15, 2023, hearing on class certification, both the proposed class and the proposed sub-class should be defined as "All persons residing in the Commonwealth of Massachusetts [as to whom], within four years prior to the filing of this action, Defendants initiated . . ."

Defendants timely opposed the motion and at a recent hearing this Court heard arguments from counsel for plaintiff and counsel for defendants.

## IV. Plaintiff's Motion for Class Certification

### A. Mass. Gen. Laws Chapter 93A, § 9

Plaintiff has asserted a claim on behalf of himself and the other members of the proposed class and sub-class under M.G.L. c. 93A, § 9.  In order to state such a claim, the complaint

> must allege that the plaintiff has been <u>injured</u> by the act or practice claimed to be unfair or deceptive and therefore unlawful under c. 93A, § 2.

<u>Tyler v. Michaels Stores, Inc.</u>, 464 Mass. 492, 501-02, 984 N.E.2d 737, 744 (2013) (emphasis added).

Thus, the invasion of a plaintiff's legal right in violation of M.G.L. c. 93A, § 2 does not establish the defendant's liability on its own.  The plaintiff must also prove that she has "suffered a distinct injury or harm" caused by the deceptive act or practice that constituted a statutory violation. <u>Id.</u> at 746; <u>see also</u> <u>Jones v. Experian Info. Sols., Inc.</u>, 141 F. Supp. 3d 159, 163 (D. Mass. 2015).

### B. Fed. R. Civ. P. 23

A court may certify a class only if it finds that the proposed class satisfies all of the requirements of Fed R. Civ. P. 23(a) and that class-wide adjudication is appropriate for one

of the reasons set forth in Rule 23(b). Smilo v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 38 (1st Cir. 2003).

A district court must conduct a "rigorous analysis" under Rule 23 before certifying the class. Id.  It may look behind the pleadings, predict how specific issues will become relevant to facts in dispute and conduct a merits inquiry to the extent that the merits overlap with the Rule 23 criteria. See In re New Motor Vehicles Canadian Exp. Antitrust Litig., 522 F.3d 6, 20 (1st Cir. 2008).

Rule 23(a) requires that a class meet the following four criteria:

1) the class is so numerous that joinder of all members is impracticable;
2) there are questions of law or fact common to the class;
3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4).

Here, plaintiff seeks to certify the proposed class and sub-class under Rule 23(b)(3) which requires that common questions of law or fact "predominate" over those affecting

-6-

individual class members and that a class action be the "superior" method for fair and efficient adjudication. The standard for demonstrating Rule 23(b)(3) predominance is "far more demanding" than that for the related requirement of Rule 23(a)(2) commonality. In re New Motor Vehicles, 522 F.3d at 20.

### C. Application

Defendants have opposed certification of the class and sub-class on several grounds. They contend that the proposed classes do not satisfy the requirements of: 1) commonality under Rule 23(a)(2); (2) adequate representation under Rule 23(a)(4); or (3) predominance or superiority under Rule 23(b)(3). Although the parties address each of those issues in their respective briefs, the plaintiff's reply brief, defendants' sur-reply brief and the arguments proffered at the hearing on February 15, 2023, reveal that the principal dispute is with respect to the predominance requirement in Rule 23(b)(3).

Even if the proposed class and sub-class are presumed to satisfy the requirements of Rule 23(a), plaintiff has failed to demonstrate that common issues predominate as required by Rule 23(b)(3). Common questions of law or fact predominate over individual questions and satisfy the strictures of Rule 23(b)(3) if liability and damages can be established by common proof. In re Nexium Antitrust Litigation, 777 F.3d 9, 18 (1st Cir. 2015). In assessing whether common issues will predominate, the Court

must formulate some prediction as to how specific issues will be resolved. In re New Motor Vehicles, 522 F.3d at 20.  Here, the Court finds that plaintiff has not demonstrated that liability can be established by common proof and concludes that the predominance requirement of Rule 23(b)(3) has not been met.

In order to prevail on the M.G.L. c. 93A, § 9 claim which plaintiff asserts, there must be proof of an unlawful act under c. 93A, § 2 and a distinct injury caused by that statutory violation.  Thus, in the case at bar, liability as to each class member cannot be established solely by showing that the calls and voicemails to class members made by defendants violated 940 CMR § 7.04(1)(f), an Attorney General regulation which prohibits the initiation of communication more than twice within a seven-day period for the purpose of collecting a debt.  Such a showing might be construed as a per se violation of § 2 but that still would not resolve the necessary question of whether each class member suffered a distinct injury caused by the violation as required by § 9. See Tyler, 984 N.E.2d at 746.

Nightingale submits that "disposition codes for calls" which provide detail for who was called and how many times he or she was called are sufficient to prove causation and injury-in-fact on a class-wide basis under two different theories of harm. He first contends that the Court can infer from the disposition codes that the subject calls and voicemails wasted time, wore

down class members' phone batteries and took up space in their phone memories.

According to plaintiff, those admittedly de minimis injuries are adequate to fulfill the "distinct injury or harm" required by M.G.L. c. 93A, § 9. Id.  He cites two out-of-circuit cases in support of that proposition but neither decision addresses either Chapter 93A or proof of liability in class actions.  In Drake v. FirstKey Homes, LLC, the plaintiff alleged that she listened to the voicemail at issue and that it wasted 30 seconds of her time. 439 F. Supp. 3d 1313, 1322 (N.D. Ga. 2020).  Although the district court found that the allegation was sufficient to plead an injury-in-fact under Eleventh Circuit precedent, it noted that tying up a phone line for five seconds was not a serious intrusion. Id.  The allegations and proposed common proof in the pending case cannot establish that class members actually listened to their voicemails or that an appreciable amount of their time was wasted as a result of the calls and/or voicemails.

Nor does the other case cited by plaintiff, Shields v. Dick, et al., substantiate his theory of class-wide causation and injury-in-fact. 2020 WL 5522991 (S.D. Tex. July 9, 2020). The district court in Shields held that an alleged violation of the Telephone Consumer Protection Act itself was sufficient to confer Article III standing to an individual plaintiff. Id. at

*4. After that holding, the court also opined that the text message in question plausibly caused an injury-in-fact because it allegedly posed a nuisance to the plaintiff, took up space on his phone, caused wear and tear to his phone battery and wasted his time. That dicta from the Southern District of Texas about the kind of injury sufficient to establish standing of an individual plaintiff in the "early stage" of his lawsuit is unpersuasive in the present context of proving liability on a class-wide basis in an action brought under Chapter 93A, § 9.

Even if this Court were to agree that the kind of de minimis harms identified in Shields could satisfy the requirement of a separate and distinct injury under Chapter 93A, § 9, plaintiff's proposed common proof of liability would not be sufficient to establish that each class member actually heard and was bothered by the calls or voicemails, lost memory space or battery performance and/or had their time wasted. Those questions of causation and injury are not resolved by the disposition codes relied upon by Nightingale and require individualized factual assessments.

Plaintiff also contends that defendants' calls and voicemails resulted in an invasion of the privacy of each class member and thus constitute a separate and distinct injury. Although that contention states a common theory of how one might be injured by the pertinent statutory violation, it does not

avoid the problem that proof of causation and injury-in-fact presents an individual issue. See In re Asacol Antitrust Litig., 907 F.3d 42, 51-53 (1st Cir. 2018).

The invasion of privacy asserted here is an allegedly unreasonable intrusion "upon the plaintiff's solitude or seclusion." Polay v. McMahon, 468 Mass. 379, 382, 10 N.E.3d 1122, 1126 (Mass. 2014) (cleaned up). Whether such an intrusion meets the prerequisites of being unreasonable, substantial and serious typically "presents a question of fact." Id.; see also Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 409 Mass. 514, 519, 567 N.E.2d 912, 915 (Mass. 1991) (explaining that the contours of the statutory prohibition against the invasion of privacy in Massachusetts were designed to be developed "on a case-by-case basis, by balancing relevant factors").

Defendants adamantly assert that they would raise individualized questions about the occurrence and circumstances of any alleged invasion of privacy. Plaintiff, in turn, concedes that factual disputes preclude summary judgment with respect to his own Chapter 93A, § 9 claim.

Moreover, as already noted, the disposition codes relied upon by plaintiff are inadequate to establish whether, e.g. a particular class member was physically present to hear her phone ring or that a voicemail was listened to by its intended

recipient. Nor are the codes capable of demonstrating that the conduct of the defendants necessarily comprised a serious or substantial intrusion upon the sphere of privacy maintained by each class member. See Schlesinger, 567 N.E.2d at 915-16 (explaining that facts concerning the purpose, tone and length of the calls at issue, as well as the amount of disruption to the plaintiff's daily routine, were relevant factors to consider). In fact, the SJC has suggested that it may be especially difficult for a plaintiff-debtor to establish there was an invasion of privacy resulting from a creditor's telephone calls. Id. at 915 n.6 (noting that debtors may have a "lower expectation of privacy than the person who receives unsolicited telephone calls" because a debtor should expect that a creditor may attempt to collect the debt).

The Court concludes that both theories of plaintiff which suggest that causation, injury and liability can be established by common proof are unavailing. Even if the subject disposition records may be relied upon to establish a per se violation of Chapter 93A, § 2, they do not provide common proof that individual class members suffered a separate, distinct injury caused by that violation as required by § 9. Tyler, 984 N.E.2d at 746. The question of "whether any given individual was injured" therefore depends upon an assessment of the particular facts concerning that person and such individualized assessments

would predominate over common issues. In re Asacol, 907 F.3d at 56.

As a result, defendants are entitled to raise plausible challenges as to whether each purported class member suffered an injury-in-fact caused by the alleged statutory violation. Id. at 55 (citing Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 366-67 (2011)). The proposed class and sub-class can be certified only if plaintiff demonstrates there is an administratively feasible method of adjudicating such challenges in a way that protects defendants' due process rights. Id. (citing Rule 23(b)(3)). Nightingale has, to the contrary, argued unilaterally that causation and injury are susceptible to common proof and has not proposed any method of individual adjudication, manageable or otherwise.

## ORDER

For the foregoing reasons, plaintiff's motion for class certification (Docket No. 89) is **DENIED**.

**So ordered.**

　　　　　　　　　　　　　　　　　　/s/ Nathaniel M. Gorton
　　　　　　　　　　　　　　　　　　Nathaniel M. Gorton
　　　　　　　　　　　　　　　　　　United States District Judge

Dated:  April 6, 2023