United States District Court
District of Massachusetts

```
                              )
ROBERT NIGHTINGALE,           )
                              )
        Plaintiff,            )
                              )
        v.                    )    Civil Action No.
                              )    19-12341-NMG
NATIONAL GRID USA SERVICE     )
COMPANY, INC., FIRST CONTACT  )
LLC, and IQOR US INC.,        )
                              )
        Defendants.           )
                              )
```

MEMORANDUM & ORDER

GORTON, J.

This lawsuit involves claims of unfair and deceptive business practices in violation of regulations promulgated by the Massachusetts Attorney General under the Massachusetts Consumer Protection Act, M.G.L. c. 93A, § 2. Robert Nightingale ("plaintiff" or "Nightingale") brought this action under section 9 of that statute on behalf of himself and a putative class against National Grid USA Service Company, Inc. ("National Grid"), iQor US Inc. ("iQor") and its subsidiary First Contact LLC ("First Contact") (collectively, "the defendants"). This Court denied plaintiff's motion for class certification in April, 2023.

Now pending before the Court is defendants' motion for summary judgment (Docket No. 73).  For the following reasons, the motion will be allowed.

## I.  Background

### A.  Factual Background

Nightingale is a resident of Boston, Massachusetts. National Grid is an electricity, natural gas and energy delivery company with a principal place of business in Waltham, Massachusetts.  iQor provides business process services, including first-party debt collection services.  First Contact is a wholly-owned subsidiary of iQor and provides business support services.  iQor is a Florida corporation and First Contact is a limited liability company located in St. Petersburg, Florida.

Plaintiff alleges that he incurred a debt to National Grid for electricity services and that National Grid contracted with First Contact and iQor to collect that debt.  In 2018, defendants are alleged to have called plaintiff's phone in excess of two times within a seven-day period on multiple occasions.  Nightingale claims that defendants' repeated calls: 1) caused him emotional distress, 2) wasted his time and deprived him of the use of his phone and 3) invaded his personal privacy.

B.  **Procedural History**

In October, 2018, plaintiff filed suit in Massachusetts Superior Court on behalf of himself and a putative class of Massachusetts consumers against National Grid.  During discovery, National Grid represented that it had contracted with First Contact to place first-party collection calls on its behalf.  In September, 2019, Nightingale filed a second amended complaint naming First Contact and iQor as co-defendants. Defendants then collectively removed the action to this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1453(b).

Defendants filed a motion to dismiss the second amended complaint for failure to state a claim which the Court denied in August, 2020. In December, 2022, plaintiff moved to certify a class and a sub-class of Massachusetts residents who were called more than twice within a seven-day period regarding their debts to National Grid.  The Court denied that motion in April, 2023.

Defendants moved for summary judgment in October, 2022, which plaintiff has opposed.  Plaintiff has also filed motions to exclude certain testimony and to certify a question of law to the Massachusetts Supreme Judicial Court ("the SJC").  Those non-dispositive motions are not related to or dependent upon the resolution of plaintiff's motion for class certification or defendants' pending motion for summary judgment and they are, in fact, rendered moot by virtue of the Court's decision here.

-3-

**II.  Defendants' Motion for Summary Judgment**

  **A.  Legal Standard**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)).  The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A fact is material if it "might affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The Court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).  Summary judgment is

-4-

appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 322-23.

**B.  Application**

**1.  Mass. Gen. Laws Chapter 93A, § 9**

Plaintiff has asserted a claim for damages under M.G.L. c. 93A, § 9 ("Section 9") which provides that:

> Any person . . . who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two or any rule or regulation issued thereunder . . . may bring an action[.]

Thus, the invasion of a plaintiff's legal right in violation of M.G.L. c. 93A, § 2 ("Section 2") does not establish a defendant's liability under Section 9 on its own.  The plaintiff must also prove that he or she has suffered a cognizable and distinct injury "that arises from the claimed unfair or deceptive act itself". Tyler v. Michaels Stores, Inc., 464 Mass. 492, 503, 984 N.E.2d 737, 746 (2013).

In their summary judgment briefing, defendants do not contest that their calls to plaintiff violated regulations promulgated by the Attorney General under Section 2. Specifically, 940 C.M.R. § 7.04(1)(f) deems the following an unfair or deceptive act or practice:

Initiating a communication with any debtor via
telephone . . . in excess of two such communications
in each seven-day period[.]

Instead, defendants contend that plaintiff did not suffer a
separate and distinct injury as a result of the excessive calls.
Plaintiff responds that the subject calls caused him to suffer
three cognizable injuries: 1) emotional distress, 2) wasted time
and the loss of the use of his telephone and 3) invasion of his
privacy.

### C.  Plaintiff's Purported Injuries

#### 1.  Emotional Distress

At the motion to dismiss stage, this Court explained that
an extensive list of alleged injuries, including certain
feelings of emotional distress (e.g. anger, fear and
embarrassment), "may constitute separate, identifiable harm
under Chapter 93A." Nightingale v. Nat'l Grid USA Serv. Co., No.
19-CV-12341, 2020 WL 4506167, at *3 (D. Mass. Aug. 4, 2020); see
also Harrington v. Wells Fargo Bank, N.A., No. 19—CV-11180, 2019
WL 3818299, at *4 (D. Mass. Aug. 14, 2019) (declining to "reach
[the] issue" of whether a plaintiff must prove the elements of
intentional infliction of emotional distress to demonstrate an
emotional distress injury under Chapter 93A).

Defendants contend that Nightingale must prove the elements
of intentional infliction of emotional distress ("IIED") in
order to prevail on his claim of an emotional distress injury

-6-

under Section 9.  Indeed, several decisions in this district,

citing Haddad v. Gonzalez, 410 Mass. 855, 576 N.E.2d 658 (Mass.

1991) ["Haddad"], have held that:

> A plaintiff must prove all the elements of intentional
> infliction of emotional distress in order to prevail
> on a 93A claim for emotional damages.

Zielinski v. Citizens Bank, N.A., 552 F. Supp. 3d 60, 72 (D.

Mass. 2021); Young v. Wells Fargo Bank, N.A., 109 F. Supp. 3d

387, 396 (D. Mass. 2015) (same); Keenan v. Wells Fargo Bank,

N.A., 246 F. Supp. 3d 518, 526 (D. Mass. 2017) (same).

This Court applies the same standard.  In the pending case,

Nightingale has not established the elements of IIED which are:

> (1) that [the actor] intended, knew, or should have
> known that his conduct would cause emotional distress;
>
> (2) that the conduct was extreme and outrageous;
>
> (3) that the conduct caused emotional distress; and
>
> (4) that the emotional distress was severe.

Polay v. McMahon, 468 Mass. 379, 385, 10 N.E.3d 1122, 1128

(Mass. 2014).

In particular, there is no evidence that defendants knew

plaintiff was in a vulnerable emotional state and was likely to

suffer distress or that they intended to cause him emotional

distress.  Nor are there facts which suggest that the phone

calls were conducted in an "extreme and outrageous" fashion

outside the bounds of decency.  Finally, it is undisputed that

plaintiff did not seek the services of a doctor or any

medication as a result of the calls.  Rather, he purportedly responded to the alleged emotional distress by having a "couple of drinks".

Plaintiff does not contend that the elements of IIED are satisfied here but instead responds that Haddad is unpersuasive. He cites Wilson v. Transworld Systems, Inc., in which the Massachusetts Appeals Court ("the MAC") noted that

> [r]ecent cases such as Hershenow and Tyler suggest a
> more permissive approach to injury for purposes of
> c. 93A [than Haddad].

86 Mass. App. Ct. 1109 n.4, 14 N.E.3d 968 n.4 (2014) (unpublished summary decision).

Nevertheless, the MAC did not hold in Wilson that a plaintiff is no longer required to prove the elements of IIED to demonstrate an injury under Section 9.  Furthermore, the claims in Wilson were based upon calls which were intimidating, aggressive, profane and conducted in "a threatening manner." Id. The alleged conduct in the case at bar does not rise to nearly the same level of outrageousness.  Nightingale's conclusory characterization of the subject debt collection calls as being akin to stalking and/or "violating" does not create a genuine dispute of material fact with respect to his claimed emotional damages.

## 2.   Wasted Time and Loss of Use of His Phone

Defendants contend that there is no genuine dispute of material fact as to whether the calls to Nightingale wasted his time or deprived him of the use of his phone.

It is undisputed that plaintiff answered no more than a few of the calls he received and, in fact, defendants proffer unrebutted evidence indicating that plaintiff answered only a single call.[1]   Furthermore, Nightingale testified that he does not remember the duration of any of the calls and, although he claims that he took screenshots showing the length of the calls, the subject screenshots only show missed calls with no duration. Meanwhile, plaintiff has no recollection of what he was doing when he received any of the calls and cannot attribute to them any wasted time or deprivation of the use of his phone.

At his deposition, plaintiff merely stated that he:

1) "use[s] that phone for business";

2) "[was] trying to start a business up and run a business and stuff like that"; and

3) "[a]nytime I go and I have business, I use my phone."

In response to a follow-up question, Nightingale speculated that he could have been deprived of the productive use of his phone if

_____

[1] Plaintiff suggests that he may have answered "three or four times" but cannot remember the actual number or when he answered.

people are calling in and a customer is trying to call
in at the same time . . . [and/or] it puts you in a
mood, like, you don't want to talk to anybody right
now because you're violated from these people calling
you. So it probably did [have an effect] indirectly.

Moreover, neither plaintiff nor his phone were adversely disrupted by any voicemails left by the defendants. Nightingale testified that he may have received and "vaguely" listened to a couple of voicemails regarding overdue bills (in contrast to other communications that he initiated about making a payment) but averred that the messages did not prevent him from receiving other voicemails or take up memory space on his phone because he consistently erased his messages.

Apart from his speculation about the potential effect of simultaneous calls or being put in a hypothetical bad mood, there is no indication, based upon plaintiff's call records or testimony, that he was deprived of the use of his phone or lost an appreciable amount of time due to the calls. Although the Court does not dismiss the argument that tying up someone's phone or wasting their time might constitute a "distinct injury or harm" for purposes of Section 9 in other factual circumstances, the undisputed facts here demonstrate that plaintiff did not suffer a distinct injury separate from the statutory violation of Section 2.

### 3. Invasion of Personal Privacy

Finally, defendants submit that Nightingale should be barred from asserting that the calls caused an invasion of his privacy because he failed to so assert in response to their interrogatories or at his deposition.  Whether plaintiff suffered an invasion of his privacy has, however, been the subject of dispute previously during this litigation and the Court considers his assertion of such an injury here.

The kind of invasion of privacy at issue in this case is an allegedly unreasonable intrusion "upon the plaintiff's solitude or seclusion." Polay, 10 N.E.3d at 1126 (cleaned up); see also M.G.L. ch. 214, § 1B.  Whether such an intrusion meets the prerequisites of being unreasonable, substantial and serious typically "presents a question of fact." Id.; see also Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 409 Mass. 514, 519-21, 567 N.E.2d 912, 915-16 (Mass. 1991) (explaining that facts concerning the purpose, tone and length of the calls at issue, as well as the amount of disruption to the plaintiff's daily routine, were relevant factors to consider).

In the pending case, there are no genuinely disputed facts about the purpose, tone or duration of the calls which would support a finding that there was an "unreasonable, substantial, or serious interference with [plaintiff's] privacy." M.G.L. ch.

-11-

214, § 1B.  Nor is there any indication in the record that the
timing of the calls interfered with plaintiff's daily routine.
Cf. Watkins v. Glenn Assocs., Inc., No. 15-CV-3302-H, 2016 WL
3224784, at *3 (Mass. Super. June 10, 2016) (finding that the
defendant's conduct had been "insidiously and obviously
designed" to interfere with the privacy of the plaintiff's
dinner hour).

The only fact which suggests there was an invasion of
personal privacy here is the number of calls plaintiff received
(i.e. there were multiple occasions on which he received two or
more calls within a seven-day period, especially during the
summer of 2018). See Schlesinger, 567 N.E.2d at 915 n.6 (noting
that the context of debt collection calls, what is said by the
caller, and the number of calls are the "most important factors"
to consider).  Even then, the primary basis for his claim of
invasion of personal privacy is that Nightingale later saw
missed calls associated with defendants show up on the caller
identification of his publicly-listed phone.

Furthermore, in view of plaintiff's testimony, the sphere
of privacy he maintained with respect to unwanted incoming calls
is limited. Id. at 915 and n.6 (holding that a plaintiff who
permits his telephone number to be public information "has
lessened his expectation of privacy" and that a debtor "has a
lower expectation of privacy" with respect to calls from his

-12-

creditor).  Specifically, plaintiff testified that he actively
used his phone to engage in other communications with defendants
and kept his number publicly posted on his website despite the
fact that it led to his being "attacked by scammers a lot." Id.
at 915-16 (explaining that a privacy right may be relinquished
by a plaintiff who engages in certain activities or places
oneself in "contexts where his legitimate expectation of privacy
is reduced").

Viewing the facts in the light most favorable to plaintiff,
the Court concludes that a reasonable fact-finder could
determine that the calls placed by defendants were unreasonable
relative to their purpose but could not determine that they
caused a substantial or serious intrusion upon the sphere of
personal privacy maintained by Nightingale. See Nelson v. Salem
State Coll., 446 Mass. 525, 536, 845 N.E.2d 338, 348 (2006) (an
actionable invasion of privacy "must be both unreasonable and
substantial or serious").

Plaintiff nevertheless cites Tyler in support of his
argument that there was a cognizable invasion of privacy in the
pending case. See 984 N.E.2d at 746.  In that decision, the SJC
held that a merchant who has acquired personal information in
violation of M.G.L. c. 93A, § 105(a) causes a separate and
distinct injury by then using that information for its own

-13-

business purposes, and it noted that the conduct at issue
violated Section 9 because it

> represents an invasion of the consumer's personal
> privacy causing injury or harm worth more than a
> penny[.]

Id. at 746 n.20.

The § 105(a) violation in Tyler was premised upon the
improper acquisition of personal information during a credit
card transaction.  Thus, the subsequent use of such personal
information to send the customer unwanted marketing material
necessarily implied a distinct misuse of closely held, personal
information and the invasion of personal privacy.  On the facts
of the case at bar, to the contrary, there is no background
context of ill-gotten personal information and it would be
improper to infer that the collection calls to Nightingale,
standing alone, caused an invasion of Nightingale's personal
privacy. Cf. Mahoney v. Wells Fargo Bank, N.A., 2021 WL 1178377,
at *14 (D. Mass. Mar. 29, 2021) (drawing inference of an
invasion of personal privacy where plaintiff was also asked
"questions of a personal nature" during the unwanted phone
calls).

**ORDER**

For the foregoing reasons, defendants' motion for summary judgment (Docket No. 73) is **ALLOWED**.

**So ordered.**

    /s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated:  May 19, 2023