United States District Court
District of Massachusetts

| | |
|---|---|
| Robert Nightingale, *on behalf of himself and all others similarly situated,* | ) ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| National Grid USA Service Company, Inc., et. al, | ) ) ) |
| Defendants. | ) ) ) |

Civil Action No.
19-12341-NMG

MEMORANDUM & ORDER

GORTON, J.

This putative class action involves allegedly badgering phone calls made to debtors in excess of the number of calls allowed by state regulations.  Pending before the Court are the motions of plaintiff, Robert Nightingale ("plaintiff") 1) to certify a question of law to the Massachusetts Supreme Judicial Court ("SJC") pursuant to Mass. S.J.C. R. 1:03 and 2) for class certification pursuant to Fed. R. Civ. P. 23(b)(3).  For the following reasons, both motions will be denied.

I. **Background**

As this Court outlined in a previous memorandum and order, National Grid USA Service Company, Inc. ("National Grid") is a supplier of electricity, natural gas and energy.  It hired defendants, iQor US Inc. ("iQor") and its subsidiary First

- 1 -

Contact LLC ("First Contact") (collectively, defendants), to conduct debt collection services for National Grid.

Plaintiff alleges that he incurred a debt to National Grid for utility services.  Between June 20 and June 23, 2018, he contends that defendants called his cellphone five times regarding that outstanding debt which caused him emotional distress, invaded his privacy and wasted his time.

In October, 2018, plaintiff filed suit against National Grid in Massachusetts Superior Court on behalf of a putative class of consumers similar situated.  Defendants removed the action to this Court pursuant to the Class Action Fairness Act, 28 U.S.C. §1453(b).  Plaintiff moved for class certification, which this Court denied, and sought to certify a question of law to the Massachusetts Supreme Judicial Court ("SJC"), which the Court ultimately did not address.  This Court subsequently allowed defendant's motion for summary judgment, finding that plaintiff had not stated a cognizable claim.

On appeal, the First Circuit Court of Appeals ("the First Circuit") reversed this Court's allowance of summary judgment, concluding that plaintiff had provided sufficient evidence of an injury.  The First Circuit also reversed this Court's denial of class certification and remanded the case for further proceedings consistent with its decision.  Now, on remand from

the First Circuit, plaintiff renews his requests for class certification and to certify a question of law to the SJC.

## II. **Motion to Certify Question of Law to the SJC**

The SJC permits a federal court, including a district court, to certify a question of law to it whenever there is a question of state law 1) that is determinative of the cause of action pending before this Court and 2) upon which there is no controlling precedent. Mass. S.J.C. R. 1:03; Easthampton Sav. Bank v. City of Springfield, 736 F.3d 46, 50 (1st Cir. 2013).

The area of law in which plaintiff seeks clarification is the Massachusetts Consumer Protection Act, Mass. Gen. L. 93A, §2(a) et seq. Under §2(a), businesses are forbidden from engaging in "[u]nfair or deceptive acts or practices in the conduct of any trade or commerce." By regulation, §2(a) has been interpreted to include contacting a debtor by telephone or other electronic means "in excess of two such communications in each seven-day period." 940 Mass. Code Regs. § 7.04(1)(f). When a debt collector violates §2(a) in that manner, the Attorney General may bring enforcement actions against any person it believes to be in violation of the regulation, regardless of whether the violation resulted in harm. See id. §4. Alternatively, an individual consumer may bring a private cause of action if that individual was "injured." See id. §9.

Plaintiff seeks certification to address the question of whether collection calls that were initiated in violation of the regulation but not received by the debtor constitutes an "injury" that can form a basis for a private cause of action under §9.  Plaintiff asserts that the First Circuit incorrectly implied that it does not and that such a conclusion conflicts with SJC precedent.  After careful consideration of the parties' arguments and briefing, however, the Court finds that it is unnecessary to certify plaintiff's proposed questions of law to the SJC in this case.

The First Circuit has already addressed the SJC's precedent with respect to what constitutes an injury.  In answering the question of law at issue here, the First Circuit did not, as plaintiff suggests, limit the application of Section 2 of Chapter 93A only to calls that one "receives."  Taken as a whole, the First Circuit decision concludes that a debt collector violates section 2 by

> [i]nitiating a communication with any debtor via telephone, either in person or via text messaging or recorded audio message, in excess of two such communications in each seven-day period

but a cause of action arises only when a consumer "has been injured" by that violation. See Nightingale v. Nat'l Grid USA Serv. Co., 107 F.4th 1, 5 (1st Cir. 2024) (quoting Tyler v. Michaels Stores, Inc., 984 N.E.2d 737, 744-45 (Mass. 2013)).

- 4 -

Applying that definition, the First Circuit held that "receipt of unwanted communications [could result in] a cognizable privacy-related injury under section 9." Id.

That conclusion of the First Circuit does not conflict with SJC precedent, including the decision in Armata v. Target Corp, 99 N.E.3d 788 (2018). There, the SJC dealt principally with the meaning of "initiating" and when the initiation of an incompleted phone call can amount to a violation of §2(a). See id. at 797. Armata did not, however, alter the separate requirement that the initiated communication must result in injury, as both the First Circuit and the SJC have recognized. See Nightingale, 107 F.4th at 5. The more analogous case regarding injury is Tyler. There, the SJC indicated that a violation of §2(a) must accompany a separate injury under §9. Id. (citing Tyler, 984 N.E.2d at 745-46). The mere initiation of a call that would violate §2(a) does not automatically result in an actionable "injury" under §9. Id.

The question plaintiff seeks to certify directly conflicts with that aspect of Tyler. He would have this Court ask the SJC whether there can be a per se violation of §2(a) by the initiation of more than two calls in a seven-day period, thereby constituting an "injury" under §9. As the First Circuit recognized the SJC has, however, already answered that question in the negative. See, e.g., Rawan v. Cont'l Cas. Co., 136 N.E.3d

- 5 -

327, 343 (Mass. 2019) (citing <u>Tyler</u> and concluding that Chapter 93A claim was not actionable even though there had been questionable business practice based upon lack of evidence of resulting injury); <u>Bellermann</u> v. <u>Fitchburg Gas & Elec. Light Co.</u>, 54 N.E.3d 1106, 1111 (Mass. 2016) (citing <u>Tyler</u> and rejecting class action because plaintiffs failed to indicate separate, identifiable harm resulted from the unlawful business practice alleged); <u>see also, e.g.</u>, <u>Shaulis</u> v. <u>Nordstrom, Inc.</u>, 865 F.3d 1, 8, 11, 13 n.5 (1st Cir. 2017) (rejecting Chapter 93A claim as relying on the kind of "per se theory of injury the SJC has rejected"); <u>Mulder</u> v. <u>Kohl's Dep't Stores, Inc.</u>, 865 F.3d 17, 19, 22 (1st Cir. 2017) (restating "the SJC's clear rule against 'per se' or 'deception-as-injury' claims" under Chapter 93A).

Applying that precedent, other sessions of this Court have similarly found that a violation of the applicable regulation, unmoored from allegations of a separate injury, cannot sustain a private cause of action under §9. <u>See, e.g.</u>, <u>Niedzinski</u> v. <u>Cooper</u>, No. 4:19-CV-40037-TSH, 2019 WL 4396806, at *7 (D. Mass. Aug. 14, 2019), <u>report and recommendation adopted sub nom.</u> <u>Niedzinski</u> v. <u>Nationstar Mortg. LLC</u>, No. 4:19-CV-40037-TSH, 2019 WL 4396772 (D. Mass. Sept. 11, 2019) (indicating need for individual plaintiff to plead "more than a per se injury" under §9 by alleging facts, for example, of "anger, anxiety, emotional

distress, fear, frustration [or] embarrassment" from the calls
or that the calls were "distracting[,] inconvenient . . . an
invasion of her privacy [or] wasted h[is] time and energy"); <u>see
also, e.g.</u>, Presti v. <u>Toyota Motor Sales U.S.A, Inc.</u>, No. 17-
10320-DJC, 2018 WL 792035, *3 (D. Mass. 2018) (rejecting Chapter
93A claim and noting that "[a] per se theory of injury – 'that
is, a claim that an unfair or deceptive act alone constitutes
injury'—does not suffice for a Chapter 93A claim").

Because the First Circuit's decision, the cases it cites
and other available precedent sufficiently define the meaning of
"injury" for purposes of a Chapter 93A claim, the Court finds no
absence of controlling precedent that would warrant
certification of a question to the SJC. <u>See</u> Mass. S.J.C. R.
1:03. Plaintiff's motion to that effect will therefore be
denied.

## III. <u>Motion for Class Certification</u>

Plaintiff further moves to certify a putative class under
Fed. R. Civ. P. 23(b). Under that rule, a plaintiff seeking
class certification must demonstrate that four factors have been
met: 1) the class is "so numerous" that joinder of all the
members would be impracticable, 2) there are questions of law or
fact "common to the class," 3) the claims or defenses of the
representative parties are "typical of the claims or defenses of
the class" and 4) the representative parties are able to "fairly

and adequately protect the interests of the class." Under Rule
23(b)(3), the putative representative must further show that 1)
the questions of law or fact in common "predominate" over those
affecting only individual members and 2) a class action is
"superior to other available methods" of adjudicating the case.

In his renewed motion for class certification in this case,
plaintiff seeks to represent the following class and subclass:

> The Class – All persons residing in the Commonwealth of
> Massachusetts to whom, within four years prior to the
> filing of this action, (a) [d]efendants initiated in-excess
> of two telephone calls regarding a debt within a seven-day
> period to the person's residence, cellular telephone, or
> other provided telephone number, and (b) the person
> received one of the calls.

> Sub-Class – All persons residing in the Commonwealth of
> Massachusetts to whom, within four years prior to the
> filing of this action, (a) [d]efendants initiated in excess
> of two telephone calls regarding a debt within a seven-day
> period to the person's residence, cellular telephone, or
> other provided telephone number pursuant to Program Codes
> NGR.USUT.FE.NER1BO or NGR.USUT.FE.NER5BO, and (b) the
> person received one of the calls.

The primary concern with respect to plaintiff's proposed
class certification, assigned to this Court to address on
remand, is whether plaintiff's proposed class satisfies the
predominance requirement of Rule 23(b).

That requirement, in turn, is dependent upon whether the
proposed class and subclass are "sufficiently cohesive to
warrant adjudication by representation." Amchem Prods. v.
Windsor, 521 U.S. 591, 623 (1997). The Court must be satisfied

that it can address dissimilar class member claims in a manner
that is not "inefficient or unfair." In re Asacol Antitrust
Litig., 907 F.3d 42, 51-52 (1st Cir. 2018) (quoting Amgen Inc.
v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 469 (2013)).

Two primary considerations inform the Court's predominance
analysis in this case: 1) whether the proposed class is
"ascertainable" and 2) whether all class members have "suffered
an injury-in-fact." Loughlin v. Vi-Jon, LLC, 728 F. Supp. 3d
163, 179 (D. Mass. 2024) (citing In re Nexium Antitrust Litig.,
777 F.3d 9, 19 (1st Cir. 2015)). Although a plaintiff need not
identify every class member prior to certification, the Court
must be able to discern whether class members are included or
excluded from the class "by reference to objective criteria."
Id. (quotations omitted). The Court must also find the class to
contain a

> de minimis number of uninjured members [or, at least, that]
> it will [later] be possible to establish a mechanism for
> distinguishing the injured from the uninjured class
> members.

Id. (quoting Nexium, 777 F.3d at 19 (alteration in original)).

Plaintiff claims that the predominance requirement has been
met here because defendants' records can identify 1) the persons
to whom calls were made, 2) whether those persons actually
received those calls, and 3) whether those persons are debtors
of defendants. See Nightingale, 107 F.4th at 9 (indicating that

- 9 -

once a plaintiff "receives excessive collection calls," the defendant "has caused a privacy-related injury" within the meaning of §9).  Whether the calls were particularly injurious of one's privacy, plaintiff argues, would go to the issue of damages and would not negate predominance, citing the First Circuit opinion that "additional facts showing that the calls severely invaded [a plaintiff's] privacy" may entitle him to "something more than nominal damages." Id.

Defendants rejoins that the evidence of class-wide injury plaintiff proffers, i.e., call logs indicating when customers received calls, does not, in itself, meet the full scope of requirements imposed by the subject regulation.  The Court agrees that such regulatory limitations pose significant problems for plaintiff in his effort to establish an ascertainable class of persons who share an injury-in-fact.

As a threshold matter, the regulation limits its scope to a "debtor." 940 Mass. Code Regs. 7.03. For purposes of this regulation, debtors are defined as those "residing in Massachusetts." Id.  Plaintiff concedes that approximately 2% of the putative class are not residents of Massachusetts and are therefore not subject to the applicable regulation.  The definition of debtor is also limited to "natural person[s]," indicating that commercial debtors are exempted from the regulation's reach. Id.  Based upon uncontroverted evidence from

defendants' expert, the putative class here contains both residential and commercial accounts. Both criteria would, moreover, require manual, individualized review before it would be possible to ascertain the class.

The scope of the regulation is further limited to those whose dets are "more than 30 days past due." Id.; see 220 C.M.R. §25.02(1); (defining debt on gas or electrical services as being "due" no sooner than "45 days from a customer's receipt of an invoice"). Determining the status of a debt, and thus ascertaining the class, would similarly require extensive, individualized, manual review that plaintiff's own supporting exhibits concede would be exceedingly difficult to conduct.

Finally, the regulation excludes a creditor's communications, even if in excess of the restricted number of calls, provided the communication was made "in response to a request made by the debtor." 940 C.M.R. §7.04(f); accord Nightingale, 107 F.4th at 11 (indicating that "receipt of unwanted" communication constitutes §9 injury (citing Tyler, 984 N.E.2d at 746 n.20)). Plaintiff's response is that such requests are uncommon but he does not explain how such persons could be exempted from the putative class nor rebut evidence proffered by defendants' expert. Making that determination becomes all the more difficult in light of the more than 53,000

customer accounts associated with the putative class and 13,000 additional accounts associated with the putative sub-class.

Although any one of these difficulties in establishing the putative class might not prevent certification, see, e.g., Grubb v. Green Tree Servicing, LLC, No. CV 13-07421 (FLW), 2017 WL 3191521, at *18 (D.N.J. July 27, 2017) (certifying class even though percent of class contained persons who were not residents of the state); Thrower v. Citizens Disability, LLC, No. CV 20-10285-GAO, 2022 WL 3754737, at *2 (D. Mass. Aug. 30, 2022) (certifying class despite issues in business record accuracy), their cumulative effect is dispositive of the predominance requirement.  Defendants have a right to litigate the many foreseeable defenses they have under Chapter 93A. See Loughlin, 728 F. Supp. 3d at 184 (citing Nexium, 777 F.3d at 21) (denying class certification because of the number of plausible defenses to Chapter 93A claim defendants could raise individually against dissimilar putative class members).

Because plaintiff cannot satisfy the predominance requirement, without which class certification is unwarranted, the Court need not address the other factors at issue and the motion for class certification will be denied.

**ORDER**

For the foregoing reasons, the renewed motions of plaintiff, Robert Nightingale, for class certification (Docket No. 127) and to certify questions of law to the Massachusetts Supreme Judicial Court (Docket No. 132) are **DENIED**.

**So ordered.**

Nathaniel M. Gorton
United States District Judge

Dated:  February 12, 2025