**United States District Court**
**District of Massachusetts**

|  |  |
|---|---|
| Robert Nightingale, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. |
| | ) 19-12341-NMG |
| National Grid USA Service Company et al., | ) |
| Defendants. | ) |

**MEMORANDUM & ORDER**

GORTON, J.

This case involves debt collection calls made to plaintiff, Robert Nightingale ("plaintiff" or "Nightingale"), which were allegedly harassing and in excess of the number allowed by state regulation. Now pending before the Court is the motion of defendants, National Grid USA Service Company, Inc. ("National Grid"), iQor US Inc. ("iQor") and First Contact LLC ("First Contact") (collectively, "defendants") for a bench trial. For the reasons that follow, the motion will be denied.

## I. **Background**

As this Court described in previous memoranda and orders, defendant, National Grid, is a supplier of electricity, natural gas and energy that hired defendants, iQor and First Contact, to conduct debt collection services. Plaintiff alleges that he

incurred a debt to National Grid for utility services and that, between June 20 and June 23, 2018, defendants called him five times in an effort to collect the debt. Plaintiff maintains that the calls caused him emotional distress, invaded his privacy and wasted his time.

In October, 2018, Nightingale filed suit against National Grid in the Massachusetts Superior Court on behalf of a putative class of similarly situated consumers. Defendants, iQor and First Contact, removed the case to this Court pursuant to the Class Action Fairness Act, 28 U.S.C. §1453(b), and plaintiff moved for class certification which this Court denied. Defendants then moved for summary judgment or, alternatively, for this case to proceed in the form of a bench trial. This Court allowed the motion for summary judgment and, as such, did not address defendant's request for a bench trial.

On appeal, the First Circuit Court of Appeals ("the First Circuit") reversed this Court's allowance of summary judgment, concluding that plaintiff had provided sufficient evidence of an injury. The First Circuit also reversed this Court's denial of class certification and remanded the case for further proceedings. On remand, this Court denied class certification on other grounds and scheduled a trial date, at which time defendants renewed their motion for a bench trial. Plaintiff opposes the motion and, instead, requests a trial by jury.

- 2 -

## II. Legal Standard

Under the Seventh Amendment, the right to a trial by jury is "preserved" only in "[s]uits at common law" in which the value in controversy exceeds twenty dollars. U.S. Const. amend. VII. Because the Seventh Amendment "preserves" the right to a jury, the United States Supreme Court has long applied an historical test to determine if a jury trial is warranted. Under that test, the right to a jury is limited to cases in which the cause of action is sufficiently analogous to a claim that would have been tried to a jury in an English court of law (as opposed to admiralty or equity) at the time the Seventh Amendment was ratified in 1791. See Baltimore & Carolina Line v. Redman, 295 U.S. 654, 657 (1935).

The scope of the Seventh Amendment is not limited to traditional common-law actions, however, and newly adopted statutory causes of action may nevertheless be entitled to resolution by a jury. If the statute creates "legal rights and remedies" enforceable in "ordinary courts of law," the right to a jury applies. Curtis v. Loether, 415 U.S. 189, 192 (1974).

Determining whether a statutory cause of action creates "legal rights" meant to be enforced by a court of law, rather than equity, rests upon two factors. First, the Court compares "the new statutory action to [eighteenth]-century actions brought in the courts of England prior to the merger of . . .

- 3 -

law and equity." Braunstein v. McCabe, 571 F.3d 108, 118 (1st Cir. 2009) (quoting Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 42 (1989)); see also Aaron Friedberg, Note, The Merger of Law and Equity, 12 St. John's L. Rev. 317, 317-18 & nn.1-2 (1938). Then the Court examines the remedy plaintiff seeks to determine whether it is "legal or equitable in nature." Braunstein, 571 F.3d at 118 (quoting Granfinanciera, 492 U.S. at 42). The second factor is "more important than the first." Id.

## III. **Analysis**

### A. Comparison to Eighteenth-Century Causes of Action

In this case, the sole cause of action plaintiff alleges is for a violation of the Massachusetts Consumer Protection Act, M.G.L. c. 93A, §2(a). As this Court previously explained, §2(a) forbids businesses from engaging in any "[u]nfair or deceptive acts or practices." By regulation, §2(a) has been interpreted to include a creditor contacting a debtor by phone, or other electronic means, "in excess of two such communications in each seven-day period." 940 C.M.R. §7.04(1)(f). Defendants argue that a bench trial is required here because a statutory and regulatory claim for harassing debt collection practices has no eighteenth-century common-law analogue.

When searching for a common-law analogue, the Supreme Court has cautioned that a "close equivalent" is not necessary. Pernell v. Southall Realty, 416 U.S. 363, 375 (1974). Instead,

the relevant inquiry is whether the statutory cause of action alleged is "more similar to cases that were tried in courts of law than . . . courts of equity." Tull v. United States, 481 U.S. 412, 413 (1987); see Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry, 494 U.S. 558, 558-59 (1990) (clarifying that a claim for breach of a labor union agreement was entitled to jury resolution even though such agreements were unknown in 1791).

Applying that test, the First Circuit has, in one instance, held that the parties in a Chapter 93A case were entitled to a jury trial. See Full Spectrum Software, Inc. v. Forte Automation Sys., Inc., 858 F.3d 666, 678 (1st Cir. 2017). The First Circuit determined that an "undifferentiated Chapter 93A claim," i.e., one that broadly alleged "unfair or deceptive acts or practices" and not a specific regulatory violation, encompassed a "claim for deception" that was sufficiently analogous to eighteenth-century actions at law "such as fraud, deceit, or misrepresentation." Id. (internal quotations omitted).[1] The First Circuit has yet to address, however, the issue of whether a jury trial applies to Chapter 93A claims based upon specific regulatory violations.

---

[1] Under the Massachusetts Constitution, by contrast, a direct equivalent is required. See generally Nei v. Burley, 446 N.E.2d 674 (Mass. 1983) (holding that Chapter 93A claim was equitable in nature and did not include a right to a trial by jury because Chapter 93A has no direct common-law equivalent).

At least one session of this Court has denied a trial by jury for a Chapter 93A claim that, as in this case, was based upon a specific regulatory violation rather than a general claim for unfair or deceptive practices. See Hebert v. Vantage Travel Serv., Inc., No. 17-CV-10922-DJC, 2021 WL 2516076, at *5 (D. Mass. June 18, 2021).  Although the Court agreed that Chapter 93A claims are analogous to common-law claims for fraud or deceit, it discerned no "common[-]law analogue for imposing liability through a regulatory violation." Id.  As such, the Court rejected the right to a trial by jury in Chapter 93A cases that assert specific regulatory violations. Id.

The Court in Herbert rested its conclusion mainly on the absence of a common-law analogue identified by plaintiff, see id. ("[P]laintiffs have not identified . . . a common law analogue."), which plaintiff has not done in this case either. Plaintiff suggests that a regulatory action for harassing debt collection is sufficiently analogous to a privacy or intrusion tort claim but his argument misses the mark by several centuries.  It is not sufficient for a party to offer an analogous common-law tort unless that cause of action existed under English common law in 1791. See Baltimore & Carolina Line, 295 U.S. at 657.  A tort claim for invasion of privacy or intrusion upon seclusion, however, was not recognized under American law until 1905, see Michael B. Kent, Jr., Pavesich,

*Property and Privacy: The Common Origins of Property Rights and Privacy Rights*, 2 J. Marshall L.J. 1, 3 (2009), and English common law did not recognize such a claim until far later, see David J. Seipp, *English Judicial Recognition of a Right to Privacy*, 3 Oxford J. Legal Studs. 325, 325-28, 330 (1983).

This Court will, however, respectfully differ from the decision in *Herbert* by declining to rest its ruling solely on the absence of historical analogues identified by plaintiff. Based upon perhaps a broader reading of the historical record, this Court concludes that the right to a trial by jury exists in this case notwithstanding the regulatory nature of the underlying claim.  Accord *Whitney* v. *Bucher Mun. NA, Inc.*, 745 F. Supp. 3d 1, 2 (D. Mass. 2024) (reviewing historical cases and treatises to discern right to a jury trial in Chapter 93A breach of warranty claims).

The regulation at issue here, §7.04(1)(f), intends to protect debtors from harassment by their creditors.  Under English common law, creditors possessed extensive rights as against their debtors and, at the time the Seventh Amendment was ratified, a creditor's remedies even included the ability to "to imprison . . . the debtor" until his debts were paid. 3 William Blackstone, *Commentaries*, *414.  Debtors were not, however, without any common-law recourse.  Once a debtor repaid his debt, he could not be "[t]hereafter harassed a second time" by his

creditors. Id. at *421; see New, Candid, and Practical Thoughts
on the Law of Imprisonment for Debt, 80 Monthly Rev. 167, 168
(1789) ("[I]t should not be in the power of any malicious
creditor to harass [his debtor] with false demand."); see also
Erasmus Philips, The Creditor's Advocate and the Debtor's Friend
25 (1731) (noting risk that debtors could be harassed by
"litigious creditors").

    English common law instead obligated creditors to enter
satisfaction of a debtor's judgment "on the record" with either
the Court of King's Bench or the Court of Common Pleas, both of
which were courts of law, not equity. Blackstone, supra, at
*421; see 1 Baker John Sellon, The Practice of the Courts of
Kings Bench and Common Pleas 545 (1813) (describing requirements
for recording debts with Courts of King's Bench and Common
Pleas); see also Theodore W. Dwight, The English Judicial
System, 8 Am. L. Reg. 65, 65-69 (1869) (indicating Courts of
King's Bench and Common Pleas were courts of law, not equity).

    If a creditor failed to enter satisfaction of a judgment
and instead "harasse[d] his debtor" by bringing a baseless cause
of action to recover a debt, the debtor was entitled to file a
"plea of tender" claiming he had already paid his debt and that
any further suit to recover it constituted harassment.
Blackstone, supra, at *303; see John Wentworth, A Complete
System of Pleading xvi (1797) (defining a "plea of tender" as a

- 8 -

defense at common law against an action wrongfully alleging
failure to perform). The plea of tender, like the underlying
action for a writ of debt, was a common-law claim, see
Blackstone, supra, at *303, and, if brought successfully, it
resulted in the writ of debt being dismissed, see Wentworth,
supra, at xvi; see also 1 Legal Papers of John Adams 53-55 &
n.59 (Hiller B. Zobel & L. Kinvin Wroth eds., 1965) (discussing
a case involving a plea of tender brought before the common-law
Suffolk Court of Common Pleas in Massachusetts in 1771).

In many respects, §7.04(1)(f) is a mere extension of that
common-law rule. Just as the English law in 1791 prevented a
creditor from harassing his debtor after the debtor had
satisfied his obligation, §7.04(1)(f) prevents creditors from
harassing their debtors before those debts are satisfied.
Although such a sanction is not identical to any common-law form
of action, its general nature is sufficiently analogous to the
pleas of tender once used to prevent creditor harassment under
English law, and a sufficient analogue is all that is required
for a jury trial. See Pernell, 416 U.S. at 375; Tull, 481 U.S.
at 413. The Court therefore concludes that, contrary to the
ruling in Herbert, plaintiff's claim falls "within at least the
penumbra" of an historically analogous common-law claim that
existed in 1791. Tomasella v. Nestle USA, Inc., 962 F.3d 60, 70-

71 (1st Cir. 2020) (citation omitted); cf. Hebert, 2021 WL
2516076, at *5 (citing Tomasella, 962 F.3d at 70-71).

**B. Nature of Relief Sought**

Because the existance of an historical analogue is only one
(and the less important one) of the factors that warrant a jury
trial, the Court must next assess the remedies plaintiff seeks
and whether they are common-law or equitable in nature. Frappier
v. Countrywide Home Loans, Inc., 750 F.3d 91, 98 (1st Cir.
2014); Braunstein, 571 F.3d at 118; see Frappier, 750 F.3d at 98
(indicating that, in the context of Chapter 93A, the right to a
jury trial flows from the "nature of the remedy" sought).

The four remedies plaintiff seeks in this case are an
injunction, a declaratory judgment and both actual and statutory
damages.  Plaintiff's primary form of redress, monetary damages,
is undoubtedly legal, not equitable, in nature and is a remedy
that is regularly left to jury consideration. Nat'l Lab. Rels.
Bd. V. Jones & Laughlin Steel Corp., 301 U.S. 1, 46 (1937).  As
to plaintiff's request for an injunction, however, "it goes
without saying" that injunctions are "an equitable remedy,"
Weinberger v. Romero-Barcelo, 456 U.S. 305, 311 (1982), and
plaintiff's demand for declaratory judgment is likewise an
"equitable cause of action." Great Lakes Dredge & Dock Co. v.
Huffman, 319 U.S. 293, 300 (1943)).  Defendants suggest that,
because injunctive and declaratory relief are equitable, the

relief plaintiff seeks further supports the necessity of a bench trial.

When a plaintiff seeks to enforce both legal and equitable rights, the right to trial by jury as to the legal claims "remains intact." Curtis, 415 U.S. at 196 n.10.  All facts common to both the legal and equitable claims must therefore be adjudicated by a jury, not by a court, even if the legal claims are merely "incidental" to the equitable claims. Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 510-11 (1959); Dairy Queen, Inc. v. Wood, 369 U.S. 469, 473 n.8, 474 (1962).

Because plaintiff in this case seeks both actual and statutory damages under Chapter 93A, a trial by jury is necessary with respect to plaintiff's single-count claim that defendants violated both M.G.L. c. 93A §2 and its accompanying regulation under 940 C.M.R. §7.04(1)(f). See Curtis, 415 U.S. at 196 n.1.  With respect to plaintiff's request for an injunction and declaratory judgment, such matters (to the extent plaintiff still seeks them) will be resolved by this Court.  Their equitable nature, however, offers insufficient grounds to deny a jury trial. See Dairy Queen, Inc., 369 U.S. at 473 n.8, 474; Beacon Theatres, Inc., 359 U.S. at 510-11.  Instead, plaintiff is entitled to have a jury decide all facts common to his legal and equitable claims, see Dairy Queen, Inc., 369 U.S. at 473 n.8, and defendants' motion for a bench trial will therefore be

denied, cf. Hebert, 2021 WL 2516076, at *6 (denying jury trial where plaintiff sought only equitable remedies).

### ORDER

For the foregoing reasons, the motion of defendants, National Grid USA Service Company, Inc., First Contact LLC and iQor US Inc., for a bench trial (Docket No. 106) is **DENIED**.

**So ordered.**

Nathaniel M. Gorton
United States District Judge

Dated:  May 14, 2025

- 12 -